# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

MARTY A. COLQUITT                                                                 PLAINTIFF

V.                          NO. 4:17CV00537-SWW-JTR

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions not reserved
to the Commissioner of Social Security                                            DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I.   Introduction:**

Plaintiff, Marty A. Colquitt, applied for disability benefits on October 17, 2014 and he applied for supplemental security income benefits on January 8, 2016. (Tr. at 30). In both applications, Colquitt alleged a disability onset date of April 1, 2010. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 42). The Appeals Council denied his request for review. (Tr. at

1). Thus, the ALJ=s decision now stands as the final decision of the Commissioner.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II. **The Commissioner=s Decision:**

The ALJ found that Colquitt had not engaged in substantial gainful activity since the alleged onset date of April 1, 2010. (Tr. at 32). At Step Two, the ALJ found that Colquitt has the following severe impairments: shoulder disorder and osteoarthritis. *Id*.

After finding that Colquitt's impairments did not meet or equal a listed impairment (Tr. at 34), the ALJ determined that Colquitt had the residual functional capacity (ARFC@) to perform the full range of sedentary work, except that: (1) he could only occasionally climb, balance, crawl, kneel, stoop, and crouch; (2) he could only occasionally reach overhead bilaterally; and (3) he could frequently finger and handle bilaterally. *Id*.

The ALJ found that, based on Colquitt's RFC, Colquitt was unable to perform any past relevant work. (Tr. at 40). However, relying upon the testimony of the Vocational Expert ("VE") at Step Five, the ALJ found that, based on Colquitt's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, including positions as a document preparer, and addresser, and an inspector/sampler/sorter/weigher. (Tr. at 41-42). Thus, the

ALJ found that Colquitt was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Colquitt=s Arguments on Appeal

Colquitt contends that substantial evidence does not support the ALJ=s decision to deny benefits. He argues that the ALJ did not fully develop the record, he erred at Step Two in his determination of severe impairments, he failed to conduct a proper credibility analysis, and the RFC did not fully incorporate Colquitt's limitations. For the following reasons, the Court concludes that Colquitt's Step Two argument has merit.

At Step Two, an ALJ is required to determine if an impairment is "severe." *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1521(a); 404.1520(a)(4)(ii); 416.920(a)(4)(ii). A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.* at §§ 404.1520(c); 416.920(c). Basic physical work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). If the impairment would have no more than a minimal effect on the claimant's ability to do work, it does not satisfy the Step Two requirement. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).

Colquitt argues that the ALJ should have found his cervical impairment to be

severe.[1] Indeed, objective medical test results indicate problems in the cervical spine. A cervical MRI in 2009 showed mild degenerative changes at C6-C7 and osteophytes with possible foraminal narrowing. (Tr. at 403). Colquitt complained of neck and back pain from that point forward, and indicated that nerve blocks did not help. (Tr. at 391). Colquitt further injured his neck in a car wreck in 2013, and throughout the relevant time-period, he was prescribed strong medication, including Lortab, Tramadol, Hydrocodone, and Ibuprofen 800mg. (Tr. at 415, 430, 501-502). An MRI of the cervical spine in February 2015 showed a probable large disc ridge at C6-C7, and at multiple doctor visits, Colquitt was diagnosed with cervicalgia with radiculopathy. (Tr. at 420, 425, 500). A cervical MRI in July 2015 showed deteriorating conditions: severe bilateral foraminal narrowing, canal stenosis, disc protrusion, and osteophytes. (Tr. at 494-495). Colquitt again underwent treatment, including nerve blocks and more medication. (Tr. at 457). He indicated in January 2016 that steroid injections did not bring relief. (Tr. at 500-501). His doctor referred him to physical therapy. *Id*.

In May and July 2015, the Commissioner's own medical experts found that Colquitt had a medically determinable impairment of chronic musculoskeletal neck

---

[1] He alleges that a few other impairments should have been ruled severe, but the Court finds that reversal is indicated based on the cervical impairment evidence, so it limits its discussion thereto.

pain with radiculopathy. (Tr. at 91, 105-106). They assigned postural RFC limitations. *Id*. The ALJ did not appear to credit the experts' diagnosis of chronic neck pain (because he did not find it to be a severe impairment).

At the hearing, Colquitt indicated he had constant back and neck pain. (Tr. at 55). He said he had debilitating headaches from the neck pain. *Id*. Colquitt said on a "good day" his pain rated an 8 out of 10. (Tr. at 57). He has to change positions frequently. (Tr. at 46). Colquitt also indicated he was very limited in his activities of daily living. He said he had problems with personal care like shaving, and that he stayed in his pajamas most of the day rather than straining to put pants and a belt on. (Tr. at 62). He said his family and neighbors helped care for his pets, do yardwork, and perform chores. (Tr. at 60-63). His wife did most of the grocery shopping, and he had not gone hunting or fishing in years. (Tr. at 62-63). He had trouble sleeping and only got about three hours of sleep a night. (Tr. at 61). The ALJ disbelieved Colquitt's reports of limitations, writing that his activities could not be objectively verified with any degree of certainty. (Tr. at 39). The Court considers the objective evidence of cervicalgia to be support enough for such limited activities.

The ALJ must consider the record as a whole to come to a determination on disability. Medical evidence and a claimant's testimony represent the lion's share of what the ALJ must consider. Here, both the medical evidence and the claimant's

own reports suggest a cervical impairment that would significantly limit Colquitt's functional abilities. The Commissioner's own experts reinforced that. Cervicalgia should have been ruled a severe impairment at Step Two.

## V. **Conclusion**:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ should have found Colquitt's cervical condition to be a severe impairment at Step Two.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 22nd day of August, 2018.

_____
UNITED STATES MAGISTRATE JUDGE